FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

2005 DEC -7 PM 3: 40

CLERK US DISTRICT COURT
OCALA, FLORIDA

UNITED STATES OF AMERICA

v.                                                    CASE NO. 5:05-cr-39-Oc-10GRJ

JHON ALEXANDER POSADA-VERGARA

## PLEA AGREEMENT

### A. **Particularized Terms**

Pursuant to Fed. R. Crim. P. 11(e), the United States of America, by Paul I.

Perez, United States Attorney for the Middle District of Florida, and the defendant,

JHON ALEXANDER POSADA-VERGARA, and the attorney for the defendant, Darlene

C. Barror, Esq., mutually agree as follows:

1.    Count(s) Pleading To

The defendant shall enter a plea of guilty to Count One of the Indictment.

Count One charges the defendant with conspiracy to distribute cocaine, a Schedule II

controlled substance, the amount of cocaine being five (5) kilograms or more, in viola-

tion of Title 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846.

2.    Maximum Penalties

Count One carries a maximum sentence of a mandatory minimum 10

years' imprisonment up to life imprisonment, a $4 million fine, or both, a term of

supervised release of at least 5 years, and a special assessment of $100, said special

Defendant's Initials JP                              AF Approval BA

assessment to be due on the date of sentencing. With respect to certain offenses, the

Court shall order the defendant to make restitution to any victim of the offenses(s), and

with respect to other offenses, the Court may order the defendant to make restitution to

any victim of the offense(s), or to the community, as set forth below.

3.   Elements of the Offense(s)

The defendant acknowledges understanding the nature and elements of

the offense(s) with which defendant has been charged and to which defendant is

pleading guilty.

The elements of Count One are:

First:       That two or more persons in some way or manner
            came to a mutual understanding to try to accomplish
            a common and unlawful plan, as charged in the
            Indictment; and

Second    That the defendant, knowing the unlawful purpose of the
            plan, willfully joined in it.

In addition to these elements, in order to establish that the increased penalty provisions

of 21 U.S.C. § 841(b)(1)(A) are applicable (e.g., 10 years to life imprisonment) the

United States must prove that the object of the conspiracy was to distribute five (5)

kilograms or more of cocaine.

4.   Utilization of the Sentencing Guidelines

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will

recommend to the Court that the Court determine the defendant's applicable guidelines

range and defendant's guidelines sentence, with any applicable departures, pursuant to

the United States Sentencing Guidelines.

Defendant's Initials ᕫ ᕫ                      2

### 5. Counts Dismissed

At the time of sentencing, the remaining count against the defendant, Count Two will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

### 6. Base Offense Level

Pursuant to Fed. R. Crim. P. 11(e)(1)(B), the United States and the defendant stipulate and agree that the defendant's base offense level be calculated at level 38 pursuant to USSG §§2D1.1 and 1B1.3. The defendant understands that this stipulation or agreement is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

### 7. Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b), the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with

Defendant's Initials _____     3

the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

### 8. Safety Valve Provision

The United States will recommend to the Court that it impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence, pursuant to USSG §5C1.2, if the Court finds that the defendant meets the criteria set forth in 18 U.S.C. §3553(f). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

### 9. Cooperation - Substantial Assistance to be Considered

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require. If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing

Defendant's Initials ‾J‾\‾   4

recommending (1) a downward departure from the applicable guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both. If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion for a reduction of sentence pursuant to Fed. R. Crim. P. 35(b). In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

10.     Use of Information - Section 1B1.8

        Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of defendant's cooperation shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).

11.     Cooperation - Responsibilities of Parties

        a.     The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime. However, the defendant understands that the

Defendant's Initials $\underline{\text{J P}}$          5

government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

        b.     It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

        (1)     The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

        (2)     The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement. With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of

Defendant's Initials ꓘ         6

such charges by recision of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3)     The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4)     The government may use against the defendant its own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

(5)     The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

Defendant's Initials $\underline{JP}$                7

B. **Standard Terms and Conditions**

### 1. Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offenses(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1) (limited to offenses committed on or after April 24, 1996); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663 (limited to offenses committed on or after November 1, 1987) or § 3579, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. On each count to which a plea of guilty is entered, the Court shall impose a special assessment, to be payable to the Clerk's Office, United States District Court, and due on date of sentencing. The defendant understands that this agreement imposes no limitation as to fine.

### 2. Supervised Release

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

### 3.    Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(b)(4)(A), the defendant agrees to complete and submit, upon execution of this plea agreement, an affidavit reflecting the defendant's financial condition. The defendant further agrees, and by the execution of this plea agreement, authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office or any victim named in an order of restitution, or any other source, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court.

Defendant's Initials ꓘ𝖯    9

4.    Sentencing Guidelines and Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence and the sentencing guidelines, if any, applicable to defendant's case will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant understands that the Court is required to consider any applicable sentencing guidelines but may depart from these guidelines under some circumstances. Defendant acknowledges that defendant and defendant's attorney have discussed the sentencing guidelines and defendant understands how the guidelines are applicable to defendant's case. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding the potential application of the sentencing guidelines to defendant's case and any recommendations by the government are not binding on the United States Probation Office or the Court and that, should any recommendations be rejected, and regardless of the guidelines calculated by the Probation Office or the Court, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the

Defendant's Initials J P                     10

defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

5.    Defendant's Waiver of Right to Appeal and Right to Collaterally Challenge the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence or to challenge it collaterally on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by Title 18, United States Code, Section 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by Title 18, United States Code, Section 3742(a).

6.    Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

Defendant's Initials $\underline{\text{J P}}$             11

7. <u>Filing of Agreement</u>

This agreement shall be presented to the Court, in open court or <u>in camera</u>, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

8. <u>Voluntariness</u>

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant

pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

9.    Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those facts beyond a reasonable doubt.

10.    Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

Defendant's Initials  J P                    13

11. Certification

The defendant and defendant's counsel certify that this plea agreement
has been read in its entirety by (or has been read to) the defendant and that defendant
fully understands its terms.

DATED this 29ᵗʰ day of November, 2006.

PAUL I. PEREZ
United States Attorney

By: _____

JHON ALEXANDER POSADA-VERGARA            JULIE HACKENBERRY SAVELL
Defendant                                Assistant United States Attorney

_____         _____
DARLENE C. BARROR, ESQ.                  RONALD T. HENRY
Attorney for Defendant                   Assistant United States Attorney
                                         Deputy Chief, Jacksonville Division

Defendant's Initials JP                  14

UNITED STATES OF AMERICA

v.                                              Case No. 5:05-cr-39-Oc-10GRJ

JHON ALEXANDER POSADA-VERGARA

_____

## PERSONALIZATION OF ELEMENTS

1.      From in or about 1998 through in or about October 2005, at Lake County,
in the Middle District of Florida, Ft. Lauderdale, Miami, Texas and elsewhere, did you
come to a mutual understanding with others to try to accomplish a common and
unlawful plan, that is, to distribute cocaine, a Schedule II controlled substance, the
amount of cocaine being five (5) kilograms or more?

2.      Did you, knowing the unlawful purpose of the plan, willfully join in it?

Defendant's Initials JP

UNITED STATES OF AMERICA

v.                                                          Case No. 5:05-cr-39-Oc-10GRJ

JHON ALEXANDER POSADA-VERGARA
_____

## FACTUAL BASIS[1]

Between August 1998 and August 2003, Amilcar Barros Gomez supplied large
quantities of cocaine to a number of individuals, including Carlos Ovalle. The cocaine
was transported to Haiti via vessels and planes and was then sent in smaller shipments
to Florida via vessels for further distribution. Jhon Alexander Posada-Vergara
coordinated the cocaine loads in Colombia, making sure that the cocaine was loaded
onto the vessel that was then used to transport the cocaine to Haiti or the United
States. Occasionally, Posada Vergara stored the cocaine at his residence in Colombia
prior to it being loaded onto the vessel for transportation. On occasion, the cocaine was
sold to Haitian traffickers who then sent the cocaine to the United States for distribution.
Ovalle and Barros Gomez would then make arrangements for payment for the cocaine
to be picked up in Florida. The organization also laundered the proceeds they obtained
from the sale of the cocaine within the United States and elsewhere.

_____

[1]The factual basis is prepared by the United States and does not necessarily
include all of the facts relevant to the defendant's involvement in the crime to which he
is pleading guilty and other illegal drug activities in which he may have been involved.

Defendant's Initials $\exists \mathcal{P}$

Between August and November 2000, two cooperating individuals, working at the direction of the Drug Enforcement Administration, arranged for the laundering of the drug proceeds for the organization operating in Colombia and Haiti. The arrangements were made through telephone contact between the cooperating individuals and undercover DEA Task Force Agents (TFA) with, among other individuals, Carlos Ovalle and Ricardo Pierre. The majority of the telephone calls were received by the undercover agents and the cooperating individual in Lake County, thus providing venue in the Middle District of Florida, Ocala Division. The majority of the telephone conversations and face to face meetings were audio recorded. Three money pickups were conducted in Miami, Florida which totaled over $2,000,000 in drug proceeds. The currency was ultimately wire transferred to multiple domestic and international bank accounts per the instructions of associates of Ovalle in Colombia. A fourth money pickup led to the seizure of $500,000 from Ricardo Pierre, an associate of Ovalle.

Between December 2000 and June 2002, a cooperating individual and undercover agents had numerous conversations with Ovalle and Pierre, during which Ovalle and Pierre attempted to employ the services of undercover agents, posing as captains of a sea -going vessel, to transport 300 kilograms of cocaine from Haiti to Central Florida for distribution. The transaction did not take place because Ovalle had trouble moving the cocaine to North Haiti where it was to be picked up by the undercover vessel.

Defendant's Initials ⌐ P̌         2

On January 25, 2001, Ovalle advised a cooperating individual that he and his associates were in a position to provide the agents with 100 kilograms of cocaine twice a month. In March 2001, the cooperating individual had numerous conversations with Ovalle during which Ovalle discussed the upcoming cocaine transaction. During April, 2001, the cooperating individual and TFA Montalvo, who was acting in an undercover capacity as the captain of a vessel that could transport cocaine from Haiti to Central Florida, called Ovalle in Haiti and discussed transporting 400 kilograms of cocaine to central Florida via TFA Montalvo's vessel. Conversations regarding this smuggling venture continued through September 2001.

In March 2002, the cooperating individual and Ovalle met in Panama and discussed the final details of a 300 kilogram cocaine transaction.

In May 2002, Ovalle asked the cooperating individual to have the boat captain meet him in Haiti to finalize the cocaine plans. In June 2002, a paid confidential informant working for DEA, traveled to Haiti and met with Ovalle. During the meeting, Ovalle provided the confidential informant with radio frequencies to facilitate communications during the smuggling venture and coordinates for the delivery of the cocaine load. Later in June, 2002, the confidential informant and crew left Florida destined for the north coast of Haiti to receive the delivery of the cocaine from Ovalle and his associates. During the trip, Ovalle maintained communications with the confidential informant and ultimately communicated that he was having problems with his associates regarding moving the load of cocaine to Cap Haitian. The cocaine transaction never took place. However, Ovalle maintained contact with the cooperating

Defendant's Initials $\underline{\hspace{0.3cm}}$ Ⴑ Ꮲ      3

individuals through May 2003 and continued to try to arrange for the transportation of a load of cocaine from Haiti into the United States.

Ovalle was arrested in August 2003 and law enforcement officers seized, among other items, a cellular phone which had in the phone book telephone numbers for Barros-Gomez and Juan Martin Martinez. Various drug ledgers were also seized that noted several million dollars attributed to Barros-Gomez for shipments of cocaine supplied by Barros-Gomez to Ovalle as well as hundreds of kilogram amounts of cocaine attributed to Barros-Gomez. The ledgers also had notations for Juan Martin Martinez for money transactions exceeding $1 million which Juan Martin Martinez helped to deliver to Panama to pay for cocaine supplied by Barros-Gomez. Martinez worked with Ovalle and Barros-Gomez to coordinate shipments of currency from Haiti to Panama which represented proceeds from Ovalle and Barros-Gomez's drug trafficking activities. Barros-Gomez supplied Ovalle with over 20,000 kilograms of cocaine between 1998 and Ovalle's arrest. Even after Ovalle's arrest, Barros-Gomez continued to work with Nelson Barros, Juan Martin Martinez and John Alexander Posada-Vergara to transport cocaine from Colombia to Haiti, Mexico and the United States.

In 2002, a cooperating individual, at the direction of law enforcement officers, made a number of recorded telephone calls to Nelson Barros and John Alexander Posada-Vergara during which the cooperating individual arranged for 60 kilograms of cocaine to be shipped to Texas. Additionally, the cooperating individual met with Humberto Perez-Carranza, a drug associate of Nelson Barros, John Alexander Posada-

Defendant's Initials  J P                    4

Vergara and Barros-Gomez, to finalized the transaction. Eventually, 60 kilograms of cocaine were seized on a vessel coming into Texas.

Search warrants executed on Barros-Gomez's e-mail account between late 2004 and early 2005 showed that Barros-Gomez communicated with Nelson Barros, Juan Martin Martinez and other members of the drug organization to pass telephone numbers and to arrange future cocaine smuggling ventures.

In December 2004, law enforcement officers conducted judicially authorized wiretaps in Colombia on telephone numbers associated with Barros-Gomez, Nelson Barros, Jhon Alexander Posada-Vergara and other members of the organization. Additionally, judicial wiretaps were initiated in Curacao in May 2005. During some of the recorded conversations, Barros-Gomez discussed the renaming of the M/V Paola to the M/V Sea Atlantic. A review of the e-mail messages and wiretaps showed that in mid 2005, Barros-Gomez intended to use the M/V Sea Atlantic to transport cocaine. In August 2005, the M/V Sea Atlantic met with a go fast vessel off the northern coast of Colombia and received a load of cocaine. The M/V Sea Atlantic was later seized in international waters and a search of the vessel revealed approximately 2040 kilograms of cocaine.

Judicial wiretaps were also conducted in the Dominican Republic between 2004 and 2005 on various telephones associated with Barros-Gomez and other members of the organization. A review of all of the wiretaps show that Barros-Gomez has been a large scale cocaine supplier who, through other members of the organization, including Jhon Alexander Posada Vergara, obtained sea-going vessels, go-fast boats and crew

Defendant's Initials ⟋⟍       5

members to move cocaine from Colombia to Haiti, Mexico and the United States for distribution and then used the proceeds from sale of the cocaine to purchase additional cocaine and vessels to continue the drug business.